EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Manuel Augusto Colón Cabrera<br>Melba Correa Miranda<br>   Demandantes-Apelados<br><br>          v.<br><br> Caribbean Petroleum Corporation,<br>et al.<br>   Demandados-Apelantes<br><br> Estado Libre Asociado de<br>Puerto Rico<br>   Recurrido | Certiorari<br><br>2007 TSPR 48<br><br>170 DPR ____ |

Número del Caso: AC-2006-27

Fecha: 16 de marzo de 2007

Tribunal de Apelaciones:

                    Región Judicial de Bayamón-Panel VII

Juez Ponente:

                    Hon. Rafael L. Martínez Torres

Abogados de la Parte Apelante:

                    Lcdo. Eduardo A. Vera Ramírez
                    Lcda. Isabel Garcés Castro
                    Lcda. Eileen Landrón Guadiola

Abogados de la Parte Apelada:

                    Lcdo. Manuel A. Colón Cabrera
                    Lcdo. Andrés Díaz Nieves
                    Lcdo. Eduardo Goitía Rodríguez

Oficina del Procurador General:

                    Lcda. Vanessa Ramírez
                    Procuradora General Auxiliar

                    Lcda. Mariana D. Negrón Vargas
                    Subprocuradora General

                    Lcdo. Salvador J. Antonetti Stutts
                    Procurador General

Materia: Injunction, Daños y Perjuicios por Violación a las
         Leyes de Monopolio y por Incumplimiento de Contrato

Este documento constituye un documento oficial del Tribunal
Supremo que está sujeto a los cambios y correcciones del
proceso de compilación y publicación oficial de las
decisiones del Tribunal. Su distribución electrónica se hace
como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Manuel Augusto Colón Cabrera
Melba Correa Miranda
    Demandantes-Apelados

        v.

                                    AC-2006-27

Caribbean Petroleum Corporation,
et al.
    Demandados-Apelantes

Estado Libre Asociado de
Puerto Rico
    Recurrido


Opinión del Tribunal emitida por el Juez Presidente señor Hernández Denton


San Juan, Puerto Rico, a 16 de marzo de 2007.

Hemos reconocido un derecho liberal de acceso a información pública en poder del Estado. No obstante, también hemos reiterado que *tal derecho no es absoluto* y cede en casos de imperativo interés público. En vista de ello, nos corresponde resolver si la norma de confidencialidad dispuesta en el Artículo 15 de la Ley Núm. 77 de 25 de junio de 1964, conocida como Ley de Monopolios y Restricción del Comercio, 10 L.P.R.A. sec. 257 y ss. (en adelante, Ley Núm. 77) para la información obtenida durante una investigación efectuada por la Oficina de Asuntos Monopolísticos adscrita al Departamento de Justicia (en adelante, Oficina de

Monopolios) responde a un interés apremiante del Estado y si el alcance de dicha norma se justifica para proteger tal interés.

El apelante Caribbean Petroleum Corporation (en adelante, Caribbean Petroleum) recurre de una sentencia del Tribunal de Apelaciones que concluyó que Manuel Colón Cabrera y Melba Correa Miranda (en adelante, señor Colón Cabrera) tenían derecho a descubrir, tras un examen en cámara, la información producto de una investigación efectuada por la Oficina de Monopolios contra varios distribuidores de gasolina, entre los que figuraba el demandado. Por entender que el Estado demostró tener un interés apremiante en investigar y procesar las violaciones a la Ley Núm. 77, modificamos la sentencia recurrida para que el Tribunal de Primera Instancia, luego de un examen en cámara, y en ausencia de las partes, del expediente y el informe producto de la investigación realizada por la Oficina de Monopolios, ordene la divulgación de la información que no sea impertinente, no sea de naturaleza privilegiada y no revele las técnicas de investigación del Departamento de Justicia o la identidad de informantes. Asimismo, el tribunal no podrá divulgar la información que haya sido obtenida de las personas privadas sujetas al poder de investigación de la Oficina de Monopolios bajo el palio de confidencialidad. Resolvemos, por tanto, que el acceso limitado al que tiene derecho Colón Cabrera responde a

los privilegios evidenciarios y al mandato legislativo recogido en el Art. 15 de la Ley Núm. 77, *supra*.

## I.

El señor Colón Cabrera arrendó a Caribbean Petroleum una propiedad inmueble sobre la cual enclava una estación de servicio de gasolina. Tras varias controversias entre las partes, el señor Colón Cabrera instó una acción por daños y perjuicios e incumplimiento de contrato contra Caribbean Petroleum. Entre las alegaciones, incluyó una causa de acción al amparo de la Ley Núm. 77 por discrimen en precios.

Estando el caso pendiente de resolver ante el Tribunal de Primera Instancia, el Departamento de Justicia comunicó a los medios noticiosos del país que la Oficina de Monopolios había realizado una investigación sobre la industria de la gasolina. Dicha investigación reveló que los programas de incentivos de los distribuidores de gasolina eran contrarios a los intereses de los detallistas y violaban las disposiciones de la Ley Núm. 77. En atención a ello, y en aras de proteger el libre mercado, el Departamento de Justicia emitió órdenes de cese y desista contra los distribuidores y, en adición, presentó una querella ante el Departamento de Asuntos al Consumidor contra una de las compañías investigadas.

Al enterarse de estos hallazgos, el señor Colón Cabrera solicitó al Tribunal de Primera Instancia que

ordenara al Departamento de Justicia entregarle copia del estudio y/o informe con los resultados de la investigación, en particular lo concerniente a Caribbean Petroleum. Fundamentó su solicitud en que la información recopilada era pública al haber sido divulgada a los medios y que, además, era fundamental para probar sus alegaciones ante el tribunal.

Por su parte, Cribbean Petroleum se opuso a la solicitud en base a lo dispuesto en el Art. 15 de la Ley Núm. 77 a los efectos de que toda información obtenida en el curso de una investigación civil efectuada por la Oficina de Monopolios debía mantenerse en estricta confidencialidad. De igual forma, el Departamento de Justicia se opuso mediante una comparecencia especial. Adujo que el acceso a la información tendría el efecto de obstaculizar la labor de investigación de la Oficina de Monopolios, ya que la mayor parte de la información obtenida es privilegiada y las personas la entregan voluntariamente bajo una expectativa de confidencialidad. El Tribunal de Primera Instancia acogió los planteamientos del Estado y denegó el acceso.

Inconforme, el señor Colón Cabrera presentó una solicitud de revisión ante el Tribunal de Apelaciones. En ella alegó que el foro de instancia debió permitirle el acceso en consideración a su derecho constitucional a la libertad de expresión. Así las cosas, y luego de la comparecencia de las partes, el Tribunal de Apelaciones

revocó la determinación recurrida y ordenó el acceso a los documentos luego de efectuarse un examen en cámara con el fin de proteger información privilegiada sobre otras compañías, la identidad de informantes y las técnicas de investigación criminal. Sostuvo que en nuestro ordenamiento rige una norma liberal en cuanto al acceso a información pública en poder del Estado y que el Estado no demostró un interés apremiante que justificase la norma de confidencialidad dispuesta en la ley Núm. 77.

De esta determinación Caribbean Petroleum apela ante nos y alega como único error que el señor Colón Cabrera no tenía derecho a inspeccionar los documentos en cámara. Sostiene que tal información es confidencial a tenor con lo dispuesto en el Artículo 15 de la Ley Núm. 77 y está cobijada por los privilegios evidenciarios establecidos en las Reglas 30 y 31 de Evidencia, relativos a secretos de negocio e información oficial. 32 L.P.R.A. R. 31, R. 30.

En vista de que el recurso plantea una cuestión novel y de alto interés público, resolvimos acoger el recurso como *certiorari* y acordamos expedir. Con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II.

Consideramos, en primer lugar, si la información objeto de la solicitud puede catalogarse como información pública. Es necesario hacer esa determinación preliminar

en vista de que, una vez un documento sea catalogado como público, cualquier ciudadano tiene derecho a solicitar su acceso sujeto a determinadas excepciones.

El Artículo 1(b) de la Ley de Documentos Públicos, 3 L.P.R.A. 1001(b), define un documento público como "[t]odo documento que se origine, conserve, o reciba en cualquier dependencia del Estado Libre Asociado de Puerto Rico de acuerdo con la ley o en relación con el manejo de los asuntos públicos y que de conformidad con lo dispuesto en la sec. 1002 de este título se haga conservar permanentemente o temporalmente como prueba de las transacciones o por su valor legal." Conforme a ello, resolvemos que la documentación recopilada y conservada como parte de una investigación efectuada por la Oficina de Monopolios satisface la definición antes transcrita.

Aclarado esto, concierne recordar que en Puerto Rico existe un derecho general de acceso a información pública en poder del Estado. Tal derecho surge en virtud del Artículo del Código de Enjuiciamiento Civil, 32 L.P.R.A. 1781. Dicha disposición establece que "todo ciudadano tiene derecho a inspeccionar y sacar copia de cualquier documento público de Puerto Rico, salvo lo expresamente contrario dispuesto en ley." El derecho de acceso a información pública también surge como colorario del derecho a la libertad de expresión, ya que sin conocimiento de los hechos no hay posibilidad de expresión. Por tanto, resulta innegable que el acceso a

información constituye un componente importante de una sociedad democrática en donde el ciudadano puede emitir un juicio informado sobre las actuaciones del gobierno. *Pedro Juan Soto v. Miguel Giménez Muñoz,* 112 D.P.R. 477 (1982); *David Noriega Rodríguez v. Hon. Rafael Hernández Colón,* 130 D.P.R. 919 (1992).

En vista de la importancia que tiene el derecho a obtener información pública,[1] el Estado no puede negarse caprichosamente y de forma arbitraria a permitir su acceso. *Ligia M. Ortiz v. Mercedes Bauemeister*, 152 D.P.R. 161; *Rolando Silva Iglesia v. Panel sobre el Fiscal Especial Independiente,* 137 D.P.R. 821 (1995); *Sol Luís López Vives v. Policía de Puerto Rico*, 118 D.P.R. 219 (1987); *Soto v. Giménez, supra*. Por tanto, dicha negativa debe estar fundamentada y justificada. De darse estas circunstancias, el Estado estaría legitimado para restringir el acceso de los ciudadanos a documentos de carácter público.

Si bien hemos reconocido que- como norma general- se debe hacer un análisis liberal al atender una solicitud de acceso a información custodiada por el Estado, debemos aclarar que tal derecho no puede ser absoluto. *Id.* A tales efectos, hemos dejado abierta la puerta para que, llegado el momento, resolvamos sostener la

---

[1] En la jurisdicción federal este derecho ha sido incorporado mediante legislación federal con el fin de someter a escrutinio público las operaciones de las agencias federales. *Freedom of Information Act*, 5 U.S.C.A. 552 ss.

confidencialidad de cierta información dependiendo de los intereses envueltos.

En nuestro ordenamiento no contamos con una legislación especial que disponga las excepciones en las que el Estado puede mantener ciertos documentos fuera del escrutinio público. Sin embargo, este Tribunal ha afirmado los supuestos en los que el estado válidamente puede reclamar la confidencialidad, a saber: (1) *cuando una ley así lo declara*; (2) cuando la comunicación está protegida por alguno de los privilegios evidenciarios que pueden invocar los ciudadanos; (3) cuando revelar la información puede lesionar derechos fundamentales de terceros; (4) cuando se trate de la identidad de un confidente y (5) cuando sea información oficial conforme la Regla 31 de Evidencia. *Id.*, *Angueira v. J.L.B.P.*, 150 D.P.R. 10 (2000). Para mantener la confidencialidad, el Estado tiene la carga de probar que satisface cualquiera de las excepciones antes enumeradas.

III.

En este caso, la confidencialidad surge precisamente al amparo de una ley[2]. Resulta pertinente recordar

---

[2] De hecho, en la legislación federal se establece como una de las excepciones a la divulgación, los casos en los que se dispone la confidencialidad por virtud de una ley. Freedom of Information Act, *supra*.

Además, es oportuno señalar que en uno de los intentos por legislar sobre acceso a información pública, proyecto del Senado Núm. 494 de 1973, se incluyó como excepción a la divulgación aquella materia dispuesta por orden ejecutiva o *mandato expreso de ley.* Efrén Rivera

nuestras expresiones en el caso de *Davila v. Superintendente de Elecciones,* 82 D.P.R. 264, 281 (1960), a los efectos de que para resolver que el derecho reconocido en el art. 409 del Código de Enjuiciamiento Civil no es aplicable a una clase determinada de documentos no podemos menos que exigirle a la Asamblea Legislativa una orden clara y terminante. Entendemos que esta afirmación descansa en el hecho de que el legislador realizó un balance previo entre los intereses en conflicto: por un lado, el acceso a información por un ciudadano y, por el otro, los interés del estado en que determinada información permanezca fuera del escrutinio público. Por ende, reiteramos lo expresado en *Efraín Santiago v. Maggie Bobb,* 117 D.P.R. 153 (1986) a los efectos de que el medio más efectivo para salvaguardar la información sensitiva recopilada por el Estado en su gestión oficial es mediante legislación especial.

No cabe duda que, con respecto a la información obtenida por la Oficina de Monopolios, el legislador dio una orden inequívoca de que permanecieran en estricta confidencialidad. A tales efectos, dispuso en el Artículo 15 de la Ley. Núm. 77, *supra*, que "…[l]a información **obtenida** en el uso de las facultades otorgadas en esta sección se mantendrá en estricta confidencialidad, excepto en tanto sea necesaria para usarla para fines de

---

Ramos, *La Libertad de Información: Necesidad de su Reglamentación en Puerto Rico*, 44 Rev. Jur. UPR 67 (1975)

cualquier acción judicial por parte del estado." 10 L.P.R.A. § 271 (énfasis suplido)

No obstante, en nuestro ordenamiento la clara intención del legislador de mantener ciertos documentos bajo el palio de la confidencialidad no es suficiente. Así, toda etiqueta legislativa de confidencialidad debe evaluarse frente al derecho de acceso a información invocado por el ciudadano. *Soto v. Giménez, supra.* En vista de que tal derecho es de carácter fundamental, la legislación debe someterse a un análisis de escrutinio estricto. Al mismo tiempo, debe ser interpretada restrictivamente a favor del acceso. En síntesis, toda ley que pretenda ocultar información a un ciudadano bajo el palio de la confidencialidad tiene que justificarse a plenitud. Ello se satisface si la legislación (1) cae dentro del poder constitucional del gobierno; (2) propulsa un interés gubernamental importante o sustancial; (3) el interés gubernamental no está relacionado con la supresión de la libre expresión; y (4) la restricción concomitante del derecho a la libre expresión no es mayor que la esencial para propulsar dicho interés. *Ortiz v. Bauemeister, supra; Angueira v. J.L.B.P, supra; Soto v. Giménez, supra.* Así pues, el Estado puede invocar el manto de secretividad en casos de imperativo interés público. *Id.*

Por tanto, debemos examinar si el interés del Estado en este caso es lo suficientemente apremiante para

justificar la norma de confidencialidad dispuesta en la Ley Núm. 77, *supra*.

IV.

De una lectura de la exposición de motivos de la Ley Núm. 77 se desprende que su objetivo primordial fue evitar la concentración económica en un grupo reducido de personas[3]. En específico, se establece que "[e]s principio fundamental de la democracia puertorriqueña- como lo expresa la Constitución del Estado Libre Asociado de Puerto Rico- que la voluntad del pueblo es la fuente del poder público, concibiéndose el sistema democrático como aquel que asegura la libre participación del ciudadano en las decisiones colectivas. **No es compatible con esa aspiración democrática la concentración del poder económico en unas pocas personas y entidades**, en forma tal que éstas se coloquen en posición de dominar áreas o sectores de la economía puertorriqueña[…]" (Énfasis suplido).

Así, la Ley Núm. 77 se promulgó con el fin de "evitar la confabulación entre firmas para dominar el mercado, [el] acaparamiento de materias primas, [los] aumentos indebidos en los precios resultantes de una

---

[3] El Tribunal Supremo de Estados Unidos, explicando los propósitos de la legislación federal análoga, expresó: "the Sherman Act[…]was a populist legislation which reacted to the increasing concentrations of economic power which followed on the heels of industrial revolution. The Sherman Act was the first legislation to deal with the problems of participation of small economic units in an economy increasingly dominated by economic titans." *National Broiler Marketing Ass'n v. U.S*, 436 U.S. 816 (1978).

posición monopolística, [las] prácticas discriminatorias en las relaciones con clientes [y] la concentración extrema de la actividad económica y de la riqueza en algunos grandes consocios de empresas."[4]

A esos fines, se delegó en la Oficina de Monopolios la labor de fiscalizar e investigar las prácticas monopolísticas. Mediante esa delegación, el legislador quiso dotar al Estado con los instrumentos investigativos necesarios para identificar y erradicar las violaciones a la Ley Núm. 77. No cabe duda que dichas facultades constituyen un componente fundamental en nuestra sociedad democrática, toda vez que la concentración del poder económico resulta en la concentración del poder político y social, lo que, indiscutiblemente, contradice la aspiración de un sistema en el que haya participación ciudadana en igualdad de condiciones. Así lo entendieron los propulsores de la Ley Núm. 77 al expresar que "el pueblo [tiene que asegurarse] de que no han de germinar en Puerto Rico[…] concentraciones de poder económico, para no correr el riesgo de que toda la vida económica del país pueda quedar a merced de un grupo reducido de personas que actúen movidas por su puro interés privado. Ante una situación de tal naturaleza, es difícil concebir que las decisiones colectivas vayan a tomarse verdaderamente a base de la libre participación de todos

---

[4] Vistas Públicas de la Ley Núm. 77, *supra*, celebradas el 10 de marzo de 1964 sobre el P. de la C. 909, Monopolios, Pág. 2.

los ciudadanos." [5]   Tomando en cuenta la dimensión del problema que quiso resolver la Asamblea Legislativa mediante la aprobación de la Ley Núm. 77 y, además, considerando que se trata de un asunto que incide sobre los cimientos de nuestra sociedad democrática, entendemos que los propósitos que subyacen dicha legislación son de la más alta jerarquía y constituyen un interés apremiante del Estado.

En su comparecencia, el Estado aduce como fundamento para oponerse al reclamo de acceso a información que revelar la misma obstaculizaría las investigaciones futuras de la Oficina de Monopolios. Sostiene que tal conclusión se deriva del hecho de que las personas privadas, de ordinario, someten voluntariamente la información, que de otra manera no estaría accesible por ser en su mayoría privilegiada, bajo la expectativa de que se mantendrá en confidencia. Entendemos dicha preocupación.

Consideramos que al Estado le sería sumamente oneroso conseguir dicha información por otros medios. Sin

---

[5] Exposición de Motivos de la Ley Núm. 77, aprobada el 25 de junio de 1964. A modo de comparación, muchos tribunales federales han expresado que el propósito principal de la legislación federal de monopolios es preservar un sistema de libre mercado en donde haya igual oportunidad de participación ciudadana. Véase por ejemplo, *Glen Holly Entertainment, Inc. v. Tektronix Inc.*, 343 F. 3d 1000 (2003); *El Aguila Food Products, Inc. v. Gruma Corp*, 301 F. Supp. 2d 612 (2003); *U.S. v. Syufy Enterprises*, 903 F.2d 659 (1990); *Wei v. Bodner*, 127 F.R.D. 91 (1989); *O'Neill v. Coca-Cola Co.*, 669 F. Supp. 217 (1987); *Rosenberg v. Cleary,* 598 F. Supp. 642 (1984).

la información que obtiene la Oficina de Monopolios como parte de una investigación, no se pueden lograr los objetivos de la Ley Núm. 77, los cuales –como mencionamos anteriormente– son de la más alta jerarquía. En otras palabras, un menoscabo a la facultad investigativa de la Oficina de Monopolios, como el contemplado en este caso, incide sobre el interés apremiante de evitar la concentración económica en nuestro país al no poder el Estado poner en vigor las disposiciones de la Ley Núm. 77 con la efectividad y rapidez que se requiere.

En adición, la confidencialidad se sostiene en atención a que la información obtenida contiene datos sensitivos sobre las prácticas y métodos de mercadeo de las personas privadas sujetas al poder de investigación de la Oficina de Monopolios que, como norma general, no está accesible al público. En otras palabras, dichas personas revelan sus secretos de negocio bajo la certeza de que se mantendrán en estricta confidencialidad. En *Fulana de Tal v. Demandado A*, 138 D.P.R. 610 (1995) sostuvimos que la preservación de secretos de negocio constituye un interés apremiante del Estado. Por ende, si permitimos el acceso a la información **obtenida** por la Oficina de Monopolios se vería menoscabado dicho interés.

En vista de lo anterior, el legislador ordenó mantener fuera del escrutinio público la información **obtenida** por la Oficina de Monopolios en el curso de una investigación. De una lectura del Art. 15, *supra*, surge

que la confidencialidad establecida por virtud de dicha disposición se limita a la información que voluntariamente someten personas privadas a la Oficina de Monopolios bajo el palio de confidencialidad.

Ahora bien, en el expediente o informe producto de una investigación efectuada por la Oficina de Monopolios puede haber otro tipo de información, ya sea información proveniente de otras fuentes o información elaborada por la Oficina de Monopolios, que no está cobijada por la confidencialidad del Art. 15, *supra*, y es, por consiguiente, divulgable. Por "información elaborada" debe entenderse el producto o resultado de la investigación efectuada por la Oficina de Monopolios, como por ejemplo, las conclusiones, impresiones o interpretaciones hechas a partir de ella. Es decir, la información contenida en cualquier documento, en el expediente o informe que sea resultado de un análisis atribuible a la propia Oficina de Monopolios.

En vista de lo anterior, el Tribunal de Primera Instancia debe realizar un examen en cámara y en ausencia de las partes con el fin de determinar lo que puede estar sujeto a divulgación. Así, el tribunal permitirá la divulgación de toda información pertinente, no privilegiada y que no revele técnicas de investigación del Departamento de Justicia o la identidad de informantes. El tribunal tampoco divulgará la información que haya sido **obtenida** por la Oficina de Monopolios de

personas privadas bajo el palio de confidencialidad. En el caso de que dicha  información conste en el informe final o en el expediente producto de la investigación, el tribunal deberá tomar las medidas cautelares necesarias para salvaguardar la norma de confidencialidad que, como mencionamos anteriormente, contribuye a lograr los objetivos de la legislación anti-monopolística.

En conclusión, resolvemos que el objetivo que promueve la Ley Núm. 77 constituye un interés apremiante capaz de sostener la norma de confidencialidad con respecto a la información **obtenida** de personas privadas durante una investigación efectuada por la Oficina de Monopolios.

## V.

Por los fundamentos que anteceden, se modifica la Sentencia del Tribunal de Apelaciones a los fines de que al efectuar el examen en cámara, en ausencia de las partes, también se excluya la información obtenida de las personas privadas sujetas al poder de investigación de la Oficina de Monopolios. Se devuelve el caso al Tribunal de Primera Instancia para que continúe con los procedimientos de forma compatible con lo aquí resuelto.

Se dictará Sentencia de conformidad.

Federico Hernández Denton
Juez Presidente

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Manuel Augusto Colón Cabrera
Melba Correa Miranda
Demandantes-Apelados

      v.

                           AC-2006-27

Caribbean Petroleum Corporation,
et al.
     Demandados-Apelantes

Estado Libre Asociado de
Puerto Rico
     Recurrido

SENTENCIA

San Juan, Puerto Rico, a 16 de marzo de 2007.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se modifica la Sentencia del Tribunal de Apelaciones a los fines de que al efectuar el examen en cámara, en ausencia de las partes, también se excluya la información obtenida de las personas privadas sujetas al poder de investigación de la Oficina de Monopolios. Se devuelve el caso al Tribunal de Primera Instancia para que continúe con los procedimientos de forma compatible con lo aquí resuelto.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López no intervino. La Jueza Asociada señora Rodríguez Rodríguez inhibida.

                    Aida Ileana Oquendo Graulau
                    Secretaria del Tribunal Supremo